UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| ROBERT B. BROWN, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | NO. 3:17-cv-00555 |
| EXACTECH, INC. and | ) | REEVES/GUYTON |
| EXACTECH US, INC., | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

## MEMORANDUM OPINION and ORDER

Defendants have moved for summary judgment [D. 59] on all of Plaintiff's claims [D. 57]. Because the claims are time-barred, Defendants' motion will be **GRANTED**.

### I.    FACTUAL BACKGROUND

Defendants, Exactech, Inc. and Exactech US, Inc.[1] produce medical devices, and specialize in manufacturing orthopedic devices for joint arthroplasties (i.e., joint replacements) [D. 61-2, pp. 4-5]. For hip replacements, Exactech produces a device known as the "AcuMatch M-Series Femoral Stem" [*see* D. 61-6; D. 57, ¶ 8]. Plaintiff underwent a total left hip replacement surgery on September 14, 2001, where Dr. Robert Covino implanted an M-Series stem [D. 61-1, p. 5].

The hip is a "ball-and-socket" joint that sits at the intersection of two bones: the femur and the pelvis. At the end of the pelvis is the "socket"—known as the acetabulum—while the "femoral head" is a ball-like protrusion, connected to the femur, that fits into the pelvic socket. In a healthy hip, cartilage eliminates friction between the ball and the socket. When the cartilage is damaged

---

[1] Exactech US, Inc. is a wholly owned subsidiary of Exactech, Inc., and conducts Exactech, Inc.'s sales and distribution activities in the United States [D. 57, ¶ 3].

1

or destroyed, a hip arthroplasty may be necessary to restore pain-free movement of the hip. The M-Series stem that is the subject of this claim mimics the function of the femoral stem.

For almost (but, importantly, not quite) fifteen years, Plaintiff suffered no side effects from the hip replacement. Then, on May 24, 2016, Plaintiff was exiting his vehicle when the femoral stem sheared and broke in half [D. 60-2, p. 2]. According to records, he was taken to a hospital for treatment five days later, on May 29, and discharged on June 21 [*Id.*, pp. 2, 4].

Plaintiff originally filed his complaint more than fifteen years after the implant, on August 24, 2017, in the Northern District of Texas [D. 1]. Defendants quickly moved to transfer the case out of Texas [D. 17], and later filed a motion for judgment on the pleadings [D. 22]. The Texas court granted the motion to transfer, sending the case to the Eastern District of Tennessee [D. 31].

An amended motion for judgment on the pleadings was then filed by Defendants [D. 44]. This Court denied that motion, because it raised a factual issue that was inappropriate for adjudication on a motion for judgment on the pleadings [D. 51, p. 8]. (The Court also ruled that Texas law applied to this case [*Id.*, p. 4].) Plaintiff filed an amended complaint to make a minor correction on August 9, 2018 [D. 57], and Defendants filed this motion for summary judgment on August 14, 2018, which—after a response and a reply—is now ripe for the Court's decision [D. 59, 61, 62].

Plaintiff raises eight claims for relief [D. 57, pp. 13-31]. In their motion for summary judgment, Defendants do not raise any substantive arguments against these claims. Instead, they contend Plaintiff's claims should be dismissed because they are time-barred under the relevant Texas statute of repose [D. 59]. In response, Plaintiff argues he is entitled to exceptions under the statute of repose. In the alternative, he contends the statute of repose as applied to him is unconstitutional, both under the Texas and U.S. Constitutions, or that it violates public policy [D. 61].

## II. LEGAL STANDARD

Summary judgment is proper only if the record shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if a reasonable jury could find in the nonmoving party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

The moving party bears the initial burden of showing that there is no genuine issue of material fact on any element of the other party's claim or defense. *Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 847 (6th Cir. 2016). Ultimately, "[t]he critical inquiry for a district court is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) (*citing Anderson*, 477 U.S. at 251-52).

## III. DISCUSSION

### a. Statute of Repose & Exceptions

Statutes of limitation and statutes of repose are both concerned with the amount of time a plaintiff has to file her lawsuit. 51 Am. Jur. 2d *Limitation of Actions* § 4 (Westlaw 2019 update). And while statutes of repose "may not submit, to a simple, universal definition," they are distinct from statutes of limitation in both design and purpose. *Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P. v. Rankin*, 307 S.W.3d 283, 286 (Tex. 2010); *see* 51 Am. Jur. 2d, *supra*.

Fundamentally, a statute of limitation applies when a cause of action has accrued, while a statute of repose applies to an action which *may* accrue, should an injury occur in the future. 51 Am. Jur. 2d, *supra*; 5 William V. Dorsaneo III, *Texas Litigation Guide*, § 72.02A[1] (Matthew Bender). "[W]hile statutes of limitations operate procedurally to bar the enforcement of a right, a

statute of repose takes away the right altogether, creating a substantive right to be free of liability after a specified time." *Methodist Healthcare Sys.*, 307 S.W.3d at 286 (quoting *Gailbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 866 (Tex. 2009)).

Under the Texas statute of repose which applies in products liability cases, the claimant must generally commence a products liability action[2] against the manufacturer or seller of a product within fifteen years of the date the defendant sold the product. TEX. CIV. PRAC. & REM. CODE ANN. § 16.1012(b). Plaintiff commenced his suit more than fifteen years from the date of sale, but argues he is entitled to the benefit of certain statutory exceptions to the fifteen-year time limit.

Two exceptions to the general rule are available. First, the statute of repose will not apply when the manufacturer or seller has expressly warranted, in writing, that the product has a useful safe life of longer than fifteen years. *Id.* § 16.1012(c).

Nor will the statute apply under the so-called "latent disease" exception, where the claimant is exposed to the product within fifteen years of sale, the exposure causes the disease that is the subject of the action, and the symptoms of the disease do not manifest until after fifteen years from sale. *Id.* § 16.1012(d)(1)-(3). A related provision provides the statute of repose "does not reduce a limitations period for a cause of action described by Subsection (d) [the 'latent disease' exception] that accrues before the end of the limitations period under this section." *Id.* § 16.1012(d-1).

### i. Express Warranty

The first exception to the statute of repose provides the fifteen-year limitation will not apply when the manufacturer or seller "*expressly* warrants *in writing* that the product has a useful safe life of longer than 15 years." *Id.* § 16.012(c) (emphasis added).

---

[2] Meaning "any action against a manufacturer or seller for recovery of damages or other relief for harm allegedly caused by a defective product, whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories[.]" TEX. CIV. PRAC. & REM. CODE ANN. § 16.012(a)(2).

Plaintiff "concedes that Dr. Brian Covino, M.D. [who performed the surgery in 2001] cannot recall an express and direct affirmation from Defendants that the [device's] lifespan was 15-20 years" [D. 61, ¶ 29]. In his affidavit, Dr. Covino asserts he "would have advised the patient of an expected 15-20 year life span of the implant," and he would have provided the advice "orally and/or in writing" prior to the surgery [D. 61-4, ¶ 8]. Plaintiff contends this "advice" amounts to a warranty. But his argument fails under the clear statutory language of § 16.012(c).

First, a doctor is not a "manufacturer" or "seller" within the meaning of the statute.[3] *See Hadley v. Wyeth Laboratories, Inc.*, 287 S.W.3d 847, 849-50 (Tex. Ct. App. 2009) (finding that, at common law, doctors are not considered "sellers" for products liability purposes, and that statutory definition does not abrogate the common law definition). So even if Dr. Covino had expressly warranted the product in writing, his warranty would be legally ineffective.

Plaintiff also concedes that it is "part and parcel of Defendants' business model to not directly provide a warranty for their products" [D. 61, ¶ 30]. Instead, Defendants purportedly warrant their products by producing (or "caus[ing] to be produced") "literature" suggesting the product will last fifteen to twenty years, and "indirectly advis[ing] and inform[ing] practitioners that their product has a specific life expectancy" [D. 34, 36]. Setting aside whether such literature counts as a "writing," such an "indirect" warranty is not an *express* warranty, which is what the statute requires [*see also* D. 61, ¶ 32 (arguing Defendants' used "unofficial" statements of sales representatives "to *imply* a warranty to the orthopedic surgeon community") (emphasis added)].

To prevail, the party seeking the benefit of the § 16.012(c) exception needs to show the "manufacturer" or "seller" made a written, express warranty. Plaintiff has not done so, and therefore cannot claim the exception.

---

[3] The applicable statutory definition is found at TEX. CIV. PRAC. & REM. CODE ANN. § 82.001. *See id.* § 16.012(a)(1).

### ii. Latent Disease

Plaintiff next argues that under the "plain language" of § 16.012(d-1), he should not be subject to the fifteen-year limit [D. 61, p. 9]. Separately, he argues that he qualifies for the "latent disease" exception[4] in § 16.012(d). In essence, Plaintiff treats these as two different exceptions. But by the terms of the statute, Plaintiff must first show that his cause of action is the sort described in subsection (d) before he can claim the particular exception of subsection (d-1). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.012(d-1) ("This section does not reduce a limitations period for a *cause of action described by subsection (d)* that accrues before the end of the limitations period under this section") (emphasis added).

Subsection (d) provides that the statute of repose will not apply when the claimant establishes the following: "1) they were exposed to the product that is the subject of the action before the end of 15 years after the date the product was first sold; 2) the claimant's exposure to the product caused the claimant's disease that is the basis of the action; and 3) the symptoms of the claimant's disease did not, before the end of fifteen years after the date of the first sale of the product by the defendant, manifest themselves to a degree and for a duration that would put a reasonable person on notice that the person suffered some injury." *Id.* § 16.012(d)(1)-(3).

The parties agree the femoral stem broke within fifteen years of the date of sale, that Plaintiff brought suit after fifteen years (outside the applicable statute of repose), and that suit was brought within two years of the date the injury actually occurred (inside the applicable statute of limitations[5]). Plaintiff argues that because he received the implant within fifteen years of the date

---

[4] The word "latent" never appears in the statute, but Texas courts have informally referred to this provision as the "latent disease" exception. *See Gailbraith*, 290 S.W.3d at 867 ("Products claims now have their own statute of repose, a fifteen-year period to which exception is made for products with longer warranties [§ 16.012(c)] and products that cause latent diseases [§ 16.1012(d)]").
[5] TEX. CIV. PRAC. & REM. CODE ANN. § 16.003.

6

of sale, and it caused his injury at a later date, he can claim the protection of subsection (d). And because subsection (d-1) does not reduce the applicable statute of limitations period for a cause of action in these situations, he argues the suit is timely under this narrow exception.[6]

To recover in tort, a plaintiff must show i) defendant had a duty; ii) defendant breached that duty; and that the defendant iii) caused iv) a harm (for which plaintiff can be compensated in damages). Traditional tort law doctrine is well-equipped to compensate plaintiffs for injuries that manifest quickly or immediately—in other words, where the breach immediately causes the injury that leads to the harm. *See In re Paoli R.R. Yard Litig.*, 916 F.2d 829, 851 (3d. Cir. 1990) (citing Note, *Medical Surveillance Damages: A Solution to the Inadequate Compensation of Toxic Tort Victims*, 63 Ind. L.J. 849 (1988)).

But traditional tort law was not developed in a world where individuals may unwittingly expose themselves to a variety of toxic substances that could cause serious harm later in life. A "latent" disease or injury is a modern tort concept introduced to provide redress for plaintiffs whose claim for damages arise long after they are exposed to the substance that caused their injury or disease. *Id.*; *see also Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 230 (5th Cir. 1984) (describing the "pure" latent injury case, where "the plaintiff fails to discover either the injury or its cause until long after the negligent act occurred").

Plaintiff (implicitly) relies on the assumption that "disease" should be read broadly to encompass any sort of injury [D. 61, p. 15]. Defendants argue the statutory exception was not meant to include an "acute, traumatic" injury, like the one suffered here; instead, it should only apply when there is a "slow, insidious" progression of a latent disease [D. 62, p. 5].

---

[6] Again, in his brief, Plaintiff argues from the premise that (d) and (d-1) are independent exceptions. They are clearly not, so the Court is grafting these separate arguments on one another for clarity [*see* D. 61, pp. 5-11, 15-16].

Medical device failures are not the prototypical latent injury situation. *In re Paoli R.R. Yard Litig.*, 916 F.2d at 851 (latent injury case "ordinarily arises" in one of three situations: occupational disease, medical malpractice, and pharmaceutical side effects). Texas courts have not addressed whether medical device failures might count as a latent injury or disease under this statute, nor is there much useful analysis from other states with similar statutes of repose.[7]

A Texas appellate court has addressed the conflation of "injury" and "disease" in a similar context. *See Howard v. Fiesta State Show Park, Inc.*, 980 S.W.2d 716, 718 (Tex. Ct. App. 1998). In that case, the plaintiff had ridden a roller coaster on May 17, 1992, and shortly after the ride, experienced a pain in his neck. He sought treatment, but the doctor could not determine whether the roller coaster ride caused the pain, or whether it was related to the plaintiff's history of back problems; in any event, the pain subsided and the plaintiff did not file suit. *Id.*

More than three years later, the plaintiff began to experience recurrent headaches, accompanied by hypertension, dizziness, vision problems, hearing problems, and short term memory loss. *Id.* He learned from a doctor that a tear in the membrane surrounding his brain and spinal cord—likely suffered during the roller coaster ride—caused these symptoms. *Id.* After surgery, he promptly sued the theme park on December 19, 1996, although his suit fell outside the applicable two-year statute of limitations. *Id.* at 718-19.

But he argued his suit was not time-barred because the "discovery rule"—which delays the accrual of a cause of action until the plaintiff knows, or should have known, of the injury—should apply in his case. *Id.* at 719-20. In Texas, the discovery rule pertains to cases where the injured

---

[7] The closest discussion comes from a recently issued multidistrict litigation opinion. *In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.*, No. 3:12-MD-2391 et al., 2019 U.S. Dist. LEXIS (N.D. Ind. Jan 3, 2019). The opinion addresses a judicially created latent disease exception to a statute of repose in North Carolina. But the North Carolina case law is horrendously complicated and inconlusive—the bushwhacking required to harvest any persuasive reasoning that might be fruitful is simply not worth it.

party was exposed to a latent disease, and remained asymptomatic for a period beyond the expiration of the statute of limitations. The plaintiff tried to analogize his late-appearing roller coaster injury to such a disease. *Id.* at 722 (citing *Childs v. Haussecker*, 974 S.W.2d 31 (Tex. 1998)).

The court of appeals did not agree. While the plaintiff did not discover the full extent of his injuries until later, the plaintiff "knew he had been injured during the roller coaster ride." *Id.* The discovery rule should apply in cases where "the disease inherently lay dormant for many years, could not be detected for an extended time, the plaintiff experienced no immediate injury, or there was no single event upon which the cause of action could accrue." *Id.* The roller coaster incident was a "single, discernable event," from which an injury arose, and therefore applying the discovery rule was not appropriate. *Id.*

The reasoning used here suggests that a Texas court would decide similarly when interpreting § 16.012(d). To meet the statute of repose exception, the claimant must show they were i) exposed to the product within fifteen years of the product's sale, ii) that the exposure caused the disease, and ii) that the symptoms manifested after fifteen years had elapsed. TEX. CIV. PRAC. & REM. CODE ANN. § 16.012(d)(1)-(3).

In *Howard*, the plaintiff's exposure to the harm, the actual injury, and his awareness of the harm were simultaneous. Here, Plaintiff is arguing that because there was a gap between his exposure and his injury, he is entitled to the statutory exception. But under the reasoning of *Howard* and the plain language of § 16.012(d), the separation in time between the exposure to the product and the resulting harm is immaterial. The relevant consideration is whether there was a gap between when the injury occurred, and when the harm became apparent.

Plaintiff's harm appeared immediately after the injury. He testified that his problems began the day he stepped out of his truck and felt "something" [D. 60-2, p. 2]. Even though he checked

into the hospital eight days later, he reported that at the time that he had been feeling left hip pain for eight days [*Id.*, p. 3]. Because Plaintiff has admitted the symptoms were immediately apparent, and the latent disease exception should not apply in this circumstance.

Finally, to hold otherwise would create an exception that swallows the rule. This is likely not the first case where a medical device manufacturer has sold a product to a doctor who immediately uses it for a joint replacement, and the product (unfortunately) fails many years down the line. Indeed, one could assume that in most cases, there is a temporal separation between exposure to a defective medical device and its failure. If the Court were to rule that Plaintiff could claim the benefit of § 16.012(d), it would effectively create a "medical device exception" for an otherwise strict statute of repose. There is no evidence the Texas legislature intended this outcome.

Plaintiff's claims are not subject to the statutory exception under § 16.012(d), so the Court need not address whether subsection (d-1) applies. Because neither the subsection (c) nor (d) exception fits with these facts, the Court finds the fifteen-year statute of repose applies in this case.

### b. Constitutional and Policy Claims

The Court must now address whether the application of the statute would be contrary to the United States Constitution, the Texas Constitution, or public policy.

#### i. Constitutional Claims

Plaintiff's constitutional claims come in two flavors. First, Plaintiff argues the statute of repose is invalid under the Texas Constitution's "open courts" provision. Second, Plaintiff argues the statute of repose violates the concept of "fundamental fairness" protected by the Texas and U.S. Constitutions. Both arguments are built upon the same foundation.

Courts reviewing the constitutionality of Texas statutes presume "the legislature has not acted unreasonably or arbitrarily." *Methodist Healthcare Sys.*, 307 S.W.3d at 285 (quoting *Smith v. Davis*, 426 S.W.2d 827, 831 (Tex. 1968)). The party attacking the law bears the burden of persuasion, and a court "need not exercise [its] ingenuity to find reasons for holding the law invalid." *Id.* (quoting *Tex. Nat'l Guard Armory Bd. v. McCraw*, 126 S.W.2d 627, 634 (Tex. 1939)).

Under the Open Courts provision of the Texas Constitution, "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person, or reputation, shall have remedy by due course of law." Tex. Const. art. 1 § 13. Thus, the legislature may not withdraw a common-law remedy if doing so is "arbitrary or unreasonable." *Methodist Healthcare Sys.*, 307 S.W. 3d at 285-86 (quoting *Lebohm v. City of Galveston*, 275 S.W.2d 951, 955 (Tex. 1955)). But the remedy may be curtailed if it is reasonably substituted with another remedy, constitutes a reasonable exercise of the police power, or is done in the interests of the general welfare. *Id.*

In *Methodist Healthcare Systems*, the Texas Supreme Court addressed whether a different statute of repose (applying to medical malpractice suits) was constitutional under the Open Courts provision. The applicable statute of repose in that case was for ten years. *Id.* at 285. The plaintiff had a hysterectomy in November 1995, but only learned that a surgical sponge had been left inside her after consulting a physician in July 2006. *Id.* Summary judgment was granted for the defendants because the suit was commenced outside of the ten year timeframe, but the court of appeals reversed, holding the statute unconstitutional under the Open Courts provision. *Id.*

The supreme court reversed the judgment of the court of appeals, and found the statute was constitutional. *Id.* at 292. The Open Courts provision, it held, "confers a constitutional right of access but not an everlasting one." *Id.*

In that case, the plaintiff did not discover her injury until after the ten year period had elapsed, so it would have been impossible for her to commence the suit within the applicable time period on those facts. In this case, the injury occurred within the applicable time period of fifteen years, but suit was filed more than fifteen years after the date of sale (although within the applicable statute of limitations).

This presents an interesting hypothetical that is not answered by the facts in *Methodist Healthcare Systems*: If the plaintiff is injured by the product *just before* the end of the fifteen-year window, to the point that a plaintiff could not practically commence the suit until after fifteen years have elapsed, would the Open Courts provision be violated in that scenario? (Or, would it violate fundamental fairness?) Plaintiff was discharged from the hospital on June 21, 2016, less than three months before September 14, 2016, when the fifteen-year clock would run out.

This Court is not sure, and the Texas courts have apparently not decided. But Plaintiff has not fleshed his argument out in the brief. The Court must apply a presumption that the challenged statute is constitutional and it cannot apply its own ingenuity to make Plaintiff's case for him. It finds Plaintiff has not met his burden of persuading the Court that § 16.012 is unconstitutional in this scenario. For that reason, the Court concludes that § 16.012 does not violate the Open Courts provision or the fundamental fairness principles inherent in the Texas and U.S. Constitutions.

    ii.    **Public Policy**

The public policy argument is thin. The thrust of Plaintiff's contention is that by allowing "intentional" wrongdoers to take advantage of the statute, the "fair and just balance" struck by the statute would be disrupted [D. 61, ¶ 67]. Under the law as written, a "products liability action" is defined as: "[A]ny action against a manufacturer or seller...caused by a defective product, whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation,

breach of express or implied warranty, or *any other theory or combination of theories*[.]" TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (emphasis added).

The statutory language belies the premise of Plaintiff's argument. The statute of repose applies to an action brought under "any theory or combination of theories." Whether prudent or not, the language suggests the Texas legislature did not intend to discriminate between intentional and unintentional wrongdoers. Instead, the language indicates the legislature intended to create an umbrella under which any products liability defendant could seek protection, notwithstanding their degree of culpability. This Court should not second-guess legislative policy, and it will not elect to do so here by denying the motion for summary judgment on these public policy grounds.

## IV. CONCLUSION

In conclusion, the fifteen-year statute of repose applies to bar Plaintiff's claims, and the Court has not found the statute violates either the Texas or U.S. Constitution. For these reasons, Defendants' motion for summary judgment [D. 59] is **GRANTED**, and this case is **DISMISSED**.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**